IN THE CIRCUIT COURT FOR KNOX COUNTY, TENNESSEE

FILED

2014 JUN 13 AM 9 50

CATHERINE F. QUIST
CIRCUIT COURT CLERK

REBECCA SPEARS
8351 Block House Way, #337
Knoxville, TN 37923

        Plaintiff,

v.

NHC HEALTHCARE/KNOXVILLE, LLC
c/o National Registered Agents, Inc.,
Its Registered Agent for Service
800 South Gay Street, Suite 2021
Knoxville, TN 37929-9710

and

**Darren Murphy**, *individually and in his*
*capacity as Assistant Director of*
*Nursing*
c/o NHC Healthcare/Knoxville, LLC
809 E. Emerald Avenue
Knoxville, TN 37917-5550

and

**Tim Martindale**, *individually* and in his
capacity as Director of Nursing
c/o NHC Healthcare/Knoxville, LLC
809 E. Emerald Avenue
Knoxville, TN 37917-5550

and

**Jeff Tambornini**, *individually and in his*
*capacity as Facility Administrator*
c/o NHC Healthcare/Knoxville, LLC
300 Laboratory Road
Oak Ridge, TN 37830

and

**Ray Blevins**, *individually* and in his
capacity as VP Eastern Region

NO. 2-381-14

JURY
DEMANDED

1

EXHIBIT
B

c/o NHC Healthcare/Knoxville, LLC )
9000 Executive Park Drive )
Knoxville, TN 37923 )
)
and )
)
**Brad Shuford**, *individually*, and in his )
capacity as Facility Administrator )
c/o NHC Healthcare/Knoxville, LLC )
809 E. Emerald Avenue )
Knoxville, TN 37917-5550 )
)
and )
)
**Chris West**, *individually* and in his )
capacity as VP Human Resources )
100 East Vine Street )
Murfreesboro, Tennessee, 37130 )
)
     Defendants. )

---

## COMPLAINT FOR DAMAGES

---

The Plaintiff, Mrs. Rebecca Spears ("Mrs. Spears"), files this civil action and sues the Defendants in the amount of One Million Dollars ($1,000,000.00) for compensatory damages and in the amount of Two Million Dollars ($2,000,000.00) for punitive damages.

1. The jurisdiction of this Court is invoked by Mrs. Spears pursuant to Tenn. Code Ann. § 4-21-311, to secure protection and redress for the deprivation of protected rights granted by the Tennessee Human Rights Act ("THRA"), as amended, providing for injunctive relief and other relief for injuries,

2

damages and losses proximately resulting from sex discrimination in employment.

2.     This civil action is a proceeding for benefits due Mrs. Spears and for relief requiring Defendants, NHC Healthcare, to provide Mrs. Spears compensatory damages, damages for humiliation and embarrassment, prejudgment interest, reasonable attorney fees and costs, punitive damages for intentional and/or reckless unlawful conduct and for such additional damages and relief as may be necessary to effectuate the purposes of the Tennessee Human Rights Act and Tennessee's Common Law.

3.     Rebecca Spears is a female resident of Knox County, Tennessee.

4.     Defendant, **NHC Healthcare/Knoxville LLC**, is a domestic limited liability company conducting business at 809 E. Emerald Avenue in Knoxville, Knox County, Tennessee, with its principal place of business at 809 E. Emerald Avenue in Knoxville, Knox County, Tennessee but upon information, knowledge and belief, NHC Healthcare/Knoxville, LLC is a series LLC being part and parcel of NHC Healthcare LLC with its principal place of business at 100 East Vine Street Murfreesboro, Tennessee, 37130, and may be served with process through its registered agent, registered with the Tennessee Secretary of State, National

3

Registered Agents, Inc., 800 South Gay Street, Knoxville, TN
37995-9710.

5.    Defendant, **Darren Murphy** is the Assistant Director of
Nursing, a management level supervisory employee of NHC
Healthcare.  At times material Defendant Murphy was Mrs. Spears's
supervisor when Mrs. Spears worked as a MDS/Careplans
Coordinator.  Mr. Murphy may be served with process in care of
his employer at NHC Healthcare/Knoxville, LLC, 809 E. Emerald
Avenue in Knoxville, Knox County, Tennessee.

6.    Defendant, **Tim Martindale**, the Director of Nursing is
a management level supervisory employee of NHC Healthcare.  At
times material Defendant Martindale was Mrs. Spears's supervisor
where Mrs. Spears worked as a MDS/Careplans coordinator at NHC
Healthcare facility in Knoxville.  Mr. Martindale may be served
with process in care of his employer at NHC Healthcare/
Knoxville, LLC, 809 E. Emerald Avenue in Knoxville, Knox County,
Tennessee..

7.    Defendant, **Jeff Tambornini**, the Facility Administrator
is a management level supervisory employee of NHC Healthcare.
At times material Defendant Tamborini had supervisory authority
over Mrs. Spears's. Mr. Tamborini may be served with process in
care of his employer at NHC Healthcare/Oak Ridge,  300
Laboratory Road, Oak Ridge, Anderson County, Tennessee.

4

8.    Defendant, **Ray Blevins**, the Regional Vice President for the Eastern Region, a management level supervisory employee of NHC Healthcare.  At times material Defendant Blevins had supervisory authority over Mrs. Spears.  Mr. Blevins may be served with process at his employer NHC Healthcare/Eastern Regional Office located at 9000 Executive Park Drive, Knoxville, TN 37923.

9.    Defendant, **Brad Shuford**, the Facility Administrator is a management level supervisory employee of NHC Healthcare/ Knoxville, LLC.  Defendant Shuford is Mrs. Spears's supervisor. Mr. Shuford may be served with process in care of his employer at NHC Healthcare/Knoxville, LLC, 809 E. Emerald Avenue in Knoxville, Knox County, Tennessee.

10.    Defendant, **Chris West**, the Vice President for Human Resources, a management level supervisory employee of NHC Healthcare.  At times material Defendant West had supervisory authority over Mrs. Spears.  Mr. West may be served with process in care of his employer at NHC Healthcare, 100 East Vine Street Murfreesboro, Tennessee, 37130.

11.    Defendant, NHC Healthcare's, operations were and are sufficient to classify it as an "employer" within the meaning of the THRA and the THA.  Defendants, Darren Murphy, Jeff Tambornini, Tim Martindale, Ray Blevins, Christ West and Brad

5

Shuford are jointly and severally subject to liability under the THRA and the THA for having committed discriminatory practices in aiding, abetting, inciting, compelling and/or commanding NHC Healthcare to engage in practices declared discriminatory by the announced public policy of Tennessee.

7.    Defendants Darren Murphy, Jeff Tambornini, Tim Martindale, Ray Blevins, Christ West and Brad Shuford are further liable to the Plaintiff under the common law of Tennessee because each of them knew that NHC Healthcare's conduct constituted a breach of a recognized legal duty to not discriminate on the basis of sex and they gave substantial assistance and/or encouragement to NHC Healthcare in committing the wrongful acts which directly and proximately caused injury, loss and damage to Mrs. Spears.

8.    Mrs. Spears has been employed by the Defendant for approximately six (6) years and eleven (11) months. She was hired on September 5, 2007, and continues to be employed in the reduced role of LPN / Floor Nurse having been demoted from MDS Coordinator / Care plans and PAE Nurse.

9.    Mrs. Spears was demoted after making complaints of sexual harassment against her immediate supervisor, Darren Murphy.

6

10. Since Rebecca made the complaints, she has been subjected to discrimination, discriminatory treatment, retaliation and harassment.

11. The discrimination and harassment are because of her sex and in retaliation for making complaints about discrimination and making complaints regarding illegal activities at NHC Healthcare Corporation.

12. Since making complaints of sexual harassment, discrimination and retaliation, Mrs. Spears has suffered adverse employment actions:

   (a) She has been demoted; and,

   (b) She was moved from a window office to a cubicle, and moved again to work as a floor nurse without any prior notice; and,

   (c) Her job responsibilities have been removed; and,

   (d) Her workplace is now an extremely hostile environment.

13. Mrs. Spears has engaged in protected conduct since early October 2012 and she has been retaliated against by Darren Murphy, Tim Martindale, Jeff Tambornini, Ray Blevins, Chris West and Brad Shuford.

14. Mrs. Spears has been retaliated against for: 1) complaining of sexual harassment by her supervisor Darren

7

Case 3:14-cv-00317-TAV-HBG  Document 1-2  Filed 07/11/14  Page 7 of 25  PageID #: 17

Murphy; 2) complaining of sexual harassment by a co-worker, Rick Smith; and 3) being a woman.

15. Rebecca is treated differently than her co-workers at NHC Healthcare/Knoxville.

16. Rebecca has been singled out for adverse employment decisions and subjected to punishment by Darren Murphy, Tim Martindale, Jeff Tambornini, Chris West, and Ray Blevins.

17. NHC Healthcare was put on notice of the discrimination, harassment and retaliation.

18. NHC Healthcare has done nothing to investigate, remediate or otherwise address the illegal conduct of its employees.

19. Chris West and Ray Blevins have failed to investigate or follow up on any complaint about the actions of Darren Murphy, as follows:

(a)  they have conducted no investigation; and,

(b)  they did not interview a single witness; and,

(c)  they did not interview Rebecca Spears regarding her allegations.

20. Chris West concluded that he was "unable to validate the merits of my [Spears] complaint."

21.    Rebecca was demoted to assistant MDS coordinator and her trainee, a younger female was promoted to be her supervisor. Rebecca Spears was subsequently demoted again to floor nurse.

22.    Jeff Tamborini, the facility administrator repeatedly told Rebecca to "let it go" concerning her complaints against Darren Murphy and told her "you are digging a hole." Mr. Tambornini also stated to Mrs. Spears, "I can get people to say things about you."

23.    Prior to her complaints of sexual harassment on October 8, 2012, Rebecca's job responsibilities included:

   (a)  MDS coordinator for the entire facility.

   (b)  Attending PPS meetings every morning to communicate with the interdisciplinary team.

   (c)  Completing all MDS assessments, including PPS assessments, admission, significant change of status and quarterly assessments.

   (d)  Completing any CAA's (care area assessments) that accompanied the comprehensive assessments.

   (e)  Scheduling all MDS assessments and care plans.

   (f)  Communicating with the therapy department and keeping track of all Change of Therapy assessments as well as End of Therapy assessments, which included running daily reports.

9

(g) Acquiring signatures from the interdisciplinary team for all MDS's that had been completed.

(h) Filing all completed signature sheets on the appropriate medical record.

(i) Delivering in-services on ADL documentation periodically and during new employee orientation.

(j) Entering tracking forms, death in the facility forms and discharge assessments. Rebecca was responsible for ensuring that all assessments were locked and transmitted in a timely manner.

(k) Reporting to the second floor dining room once a week and assisting with lunch along with the other coordinators and management.

(l) Assigned a specific day of the week to meet with new patients and/or their family to complete an Advance Directive form.

(m) At the request of Mr. Tambornini and Mr. Martindale, Rebecca was tasked to monitor nursing documentation and speak to the floor nurses directly if corrections were in order.

(n) Working the med cart on occasion if needed.

(o) Meeting with and providing reports to Harmony Healthcare when they were in the building.

10

(p) Being the PAE (pre admission evaluation) nurse and completing all assessments for PAE's, gathering and scanning supportive documentation and transmitting them to the state.

(q) Keeping an electronic log of those PAE's that was to be transmitted monthly to the regional office.

(r) Responsible for PASSR's and keeping track of them in a log book.

(s) Training Heidi Maycann the MDS and care plans.

(t) Working as House Supervisor (supervise the entire nursing staff) when needed.

24. Prior to making complaints of sexual harassment Rebecca's job performance was only ever complimented, never criticized.

25. Rebecca's job performance has been extraordinary even since the retaliation began, but she is ostracized. NHC quality indicators continued to improve while Rebecca was the MDS/ Careplans coordinator prior to making any complaints, and on several occasions she was an essential part in the facility achieving a five (5) star facility status.

26. According to Harmony Healthcare Rebecca is extremely proficient in capturing and coding correctly on the MDS with supportive nursing documentation to back up coding decisions.

11

27. Rebecca was given a "final" written warning after Darren Murphy, her immediate supervisor, accused her of sexual harassment.

28  Rebecca was sent home, after making complaints of sexual harassment against Darren Murphy, for three (3) weeks. She was told it was in order for the facility to "investigate" the complaints, even though NHC Knoxville's policy is to send the alleged offender home while an investigation takes place.

29. Upon returning to work on October 29, 2012 Rebecca was demoted and her new job description is as follows:

    (a)  Hours are 8am – 4pm, reduced from eight (8) to seven (7) hours a day, and later changed to 7am – 3pm without even 24 hours notice.

    (b)  No longer allowed to attend the PPS meetings ("morning meetings") and the day to day management of the MDS calendar and scheduling of assessments was removed.

    (c)  No longer assisting in the dining room at lunch, now tasked to help with breakfast daily.

    (d)  Rebecca is the only one required to assist at breakfast, everyone else in management still goes at lunch time.

(e) Because Rebecca has been barred from the morning meetings, she was given a list of assessments, CAA's and care plans that need to be completed by Heidi Maycann.

(f) Not allowed to attend care plan meetings or meet with families even though she was responsible for completing careplans.

30. In order to humiliate Rebecca, Ms. Maycann has been instructed to read Rebecca's tasks aloud each morning. Ms. Maycann insisted on reading the list to Rebecca in front of her co-workers.

31. For five (5) years Rebecca had an office with a window, now along with her job responsibilities being taken away from her, her office was taken. She was moved to a crowded interior cubicle. Even though she did MDS assessment and care plans she was moved out of the MDS/Care Plan office. She was moved into a cubicle in the nursing office. Mr. Martindale told her "there was office space available and that's why you're here". The truth is management is fearful she will file a lawsuit and they are attempting to humiliate and intimidate her. Management is trying to force her to quit her job. Mr. Martindale told her that she was no longer the MDS coordinator that she had been replaced. Ms. Maycann [her trainee] was promoted and she was

demoted, even though she was a certified RAC (resident assessment coordinator) and Ms. Maycann was not. Initially she was training Ms. Maycann so they could both do MDS's and care plans and Marsha Carter, the care plan coordinator at that time, could go back to the floor (per Ms. Carter's request). Now Ms. Maycann and Ms. Carter are in the MDS/Care Plan office. Ms. Maycann occupies the desk, chair and office space that Mrs. Spears occupied for five (5) years and six (6) months. She was moved to the Nursing office where the Nursing Supervisor was previously.

32. Other areas that have changed with her employment since her return are as follows.

(a) People in the building will not speak to Rebecca and upon information and belief, NHC employees have been instructed not to speak to Rebecca.

(b) There is a lack of communication with the interdisciplinary team that significantly hinders Rebecca's ability to do her job.

(c) Rebecca was moved to a very cramped cubicle and then a broom closet and later moved to the floor, with no office at all, where she is required to be on her feet almost the entire day.

(d) Rebecca was not given any office supplies or even the assessment forms she needed to do her job while she was the assistant to Ms. Maycann.

(e) Her RAI manual, that she personally kept updated was taken. This manual is essential for Rebecca to perform her job. It is over 500 pages in length.

(f) Rebecca has been degraded and belittled at every opportunity by Darren Murphy, Tim Martindale, and Jeff Tambonini.

(g) Rebecca has been ostracized on a daily basis since October 2012. Her co-workers ask her if she is in solitary confinement or what she did to get in trouble and be demoted.

(h) Rebecca has not been allowed to keep her RAC certification current. Prior to her complaints of sexual harassment, NHC payed for her certification and each time renewal was due and NHC also funded any education regarding the frequently changing rules of the MDS 3.0 process.

33. Mr. Martindale will not get on the same elevator with Rebecca.

34. Mr. Tambornini will barely say good morning and it's obvious that their working relationship has been destroyed by

15

the actions of Darren Murphy. Previously Rebecca had a very good, professional working relationship with Mr. Tambonini.

35. Mr. Tambornini ordered Rebecca a special chair five (5) years ago when she was suffering back and leg pain. The chair was removed from her upon her return to work and is now occupied by Heidi Maycann.

36. Darren Murphy repeatedly winks and smirks at Rebecca in the hallway. He also whistles and makes inappropriate gestures (grabbing his crotch, licking his lips, etc.) when passing her in the hallway.

37. Darren Murphy came into Rebecca's office the first day she was allowed to come back to work after making complaints against Mr. Murphy, closed the door, smirked and winked.

38. A partner, Melissa Roberts, saw Darren Murphy go in and close the door and she also saw that Rebecca was visibly shaking, crying and had hives on her arms and neck as a result of the incident.

39. All incidents with Darren Murphy and Tim Martindale have been reported to Mr. Tambornini and/or Mr. Martindale and/or Mr. Blevins and/or Mr. Shuford.

40. No action has been taken by NHC Healthcare or any of the responsible management.

41. Mr. Murphy has bought lunch several times for Mr. Martindale and several other employees all of which do not speak to Rebecca any longer.

42. Darren Murphy allows his manager, Tim Martindale to hunt on his land.

43. Rebecca's demotion is directly related to her complaints of sexual harassment.

44. When Darren Murphy trapped Rebecca in her office blocking the door, Mr. Martindale simply said "well... Rebecca, Darren does need access to your office, he's my assistant director of nursing."

45. Darren Murphy and Tim Martindale have orchestrated the adverse employment decisions against Rebecca and caused her demotion, they have tried to force her to quit.

46. Darren Murphy came in the office that Rebecca was in to retrieve papers from the printer in that office and as he was leaving called her a "cunt."

47. NHC has taken no corrective action to remedy the hostile work environment.

48. In an attempt to harass and intimidate Rebecca was called into a meeting on January 30, 2013 with Ray Blevins, the Regional Vice President, Tim Martindale, Director of Nursing,

Nancy Curtwright, Regional Director of Nursing, and Jeff Tambornini, the Facility Director.

49. Rebecca was told that her complaints had been "fully investigated" and appropriate action taken. Mr. Tambornini told Rebecca she should be nicer.

50. Rebecca asked about her formal complaints to home office, specifically her demotion, down sizing her office, sexual harassment and being ostracized at work but she was ignored.

51. Darren Murphy said to Rebecca "Don't you just hate it when you don't get your salami?" There was no mistaking his smirk or the sexual nature of his remark.

52. Darren Murphy continues to harass Rebecca with the full knowledge of management, but no one will do anything to protect Rebecca from him. Each time Rebecca reports Murphy's outrageous conduct Rebecca is punished.

53. When Rebecca informed Mr. Martindale that her photo had been removed from the wall he said "I'll get one put back up there." The next day a three (3) year old photo of Rebecca in a kitty cat suit from a halloween party was put on public display.

54. Mr. Martindale's actions were designed to humiliate and embarrass Rebecca and on information and belief were conducted in concert with Darren Murphy.

55. Due to the actions of Darren Murphy, Tim Martindale, Jeff Tamborini, Ray Blevins and NHC Healthcare, Rebecca's hands now shake and she breaks out in hives any time Darren Murphy engages her. When she is paged overhead by Tim Martindale or is called to his office she is visibly shaking, hands trembling and suffers increased anxiety. Most times she will have to take a medication to lower her blood pressure.

56. Darren Murphy intentionally verbally assaults Rebecca.

57. Carolyn Mitchell, NP put Rebecca on anti-anxiety medication and a beta-blocker to help her deal with the heightened stress.

58. During Mrs. Spears's employment, she was discriminated against in the terms and conditions of her employment due to her sex.

59. Rebecca Spears satisfactorily performed all of her job duties throughout her length of service with NHC Healthcare.

60. Rebecca Spears was and is qualified to perform all of the required duties of her job as a MDS Coordinator / Care plans and PAE Nurse.

61. The actions of Darren Murphy, his aiders and abettors, and NHC Healthcare were unexpected to Rebecca Spears because she performed her job well and exceeded expectations.

62.   Mrs. Spears has received no prior warning that anyone with NHC Healthcare considered there to be any difficulties with the way in which she discharged her job duties prior to her complaints against Darren Murphy.

63.   When she met with Mr. Blevins and other management personnel on January 30, 2013, numerous pretextural reasons were given for holding the meeting.  This meeting was severely emotionally upsetting to Mrs. Spears because she was already quite upset and her nerves were on edge as a result of having to deal with Darren Murphy.

64.   Although Mrs. Spears disagreed very much with the criticisms falsely leveled at her, she was, at the time of the meeting, in no physical or mental state to take issue with the members of management who were in positions above her.

65.   At the time of Mrs. Spears's demotion, she was replaced by Heidi Maycann, a younger less qualified individual.

66.   Mrs. Spears was suspended for stating to a family member that the facility was short staffed, only after the family member ask Mrs. Spears three different times. She was suspended for being truthful.  This suspension came several days after she had requested time of off from work in order to meet with the THRC.

67. No other employee has been suspended for stating they were short staffed prior to Mrs. Spears suspension or after her suspension.

68. Mrs. Spears was suspended in December 2013 for calling in sick. Even though she provided a statement from her physician and had sick days accumulated and there was a sign on the front door of the facility stating that no one should enter the building if they had the flu or they were experiencing flu like symptoms. Prior to making complaints of sexual harassment Mrs. Spears has never been suspended while employed by NHC or any other place of employment.

69. Mrs. Spears has not been allowed to work as House Supervisor since making complaints of sexual harassment.

70. Mrs. Spears has been sent home as overstaffed after being out due to illness and also sent home overstaffed at times when she did not have specific job duties. Mr. Martindale has stated to Rebecca, "I'm not sure where to put you or what to do with you".

71. Mrs. Spears has made multiple requests to Mr. Shuford that Mr. Martindale stop his slander of Rebecca. Mr. Martindale has told other employees that Rebecca is evil, dangerous and he is trying to save other employees by keeping them away from her.

72. During the time when the initial complaints of sexual harassment were made by Mrs. Spears and up to the present, Mrs. Spears has never been given the opportunity to speak with a female or even ask if she would be more comfortable speaking with a female. Mr. Martindale said, "that's the way we roll".

73. Mrs. Spears's demotion in October 2012, was a pretext.

74. Mrs. Spears was discriminated against in the terms and conditions of her employment on the basis of her gender in violation of the THRA.

75. Mrs. Spears was demoted due to her gender in violation of the THRA.

76. The conduct of the Defendants, and each of them, was such that it caused Mrs. Spears severe emotional distress which was actually and proximately caused by the extreme and outrageous conduct of the Defendants and their conduct was committed with specific intent to cause emotional distress and/or with a reckless disregard of the probability of causing that distress to Mrs. Spears.

77. Defendant, NHC Healthcare/Knoxville, LLC and NHC Healthcare, is vicariously liable for the acts of its supervisory employees and specifically Defendant Murphy. Defendants Martindale, Tambornini, West, Blevins, and Shuford are liable to Plaintiff under the common laws of Tennessee and

as one who under Tennessee statutory laws aided, abetted, incited, compelled or commanded NHC Healthcare to engage in sex discrimination and retaliation which are expressly prohibited by Tennessee law.

78.  The wrongful actions of the Defendants were intentional and/or in reckless disregard for the statutory and common law rights of Mrs. Spears.

79.  As a direct and proximate result of the wrongful actions of the Defendants in discriminating against Mrs. Spears on the basis of her sex and in retaliation for her lawful exercise of her protected rights and as a result of their outrageous conduct, Mrs. Spears has suffered both financially and emotionally.  In particular, Mrs. Spears lost and will continue to lose salary, employment opportunities and advancement and various other employee benefits that she would have earned.  In addition to the actual losses the Plaintiff has sustained, she has suffered great and severe mental anguish and distress resulting from the outrageous conduct of the Defendants and from the embarrassment and humiliation which she foreseeably experienced because of the Defendants' illegal actions.

80.  Rebecca Spears has been subjected to sex discrimination, a hostile work environment and retaliation for making complaints of sex discrimination and harassment, all in

violation of the Title VII of the Civil Rights Act of 1964; 42 U.S.C. § 1981; 42 U.S.C. § 2000(e), et seq. and the Tennessee Human Rights Act, T.C.A. § 4-21-101, et seq.

**WHEREFORE**, Mrs. Spears, the Plaintiff, respectfully requests of the Court as follows:

A.   That the Court issue and serve process on the Defendants and require them to Answer within the time prescribed by law.

B.   That the Court, upon hearing of this civil action, determine that the Plaintiff should be awarded a judgment for damages for lost wages and the value of all employment benefits, which she has lost from the date of the Defendant's discriminatory actions.

C.   That the Court award Mrs. Spears additional compensatory damages, including damages for humiliation and embarrassment as are allowed pursuant to the provisions of the THRA and the THA.

D.   Mrs. Spears should also be awarded pre-judgment interest, reasonable attorney fees and such other and further relief as the Court deems proper pursuant to the applicable common law, the THRA and the THA.

E.   Mrs. Spears further requests that at the appropriate time, the Court empanel a jury of twelve (12) good and

true women and men to try all of the issues joined among the parties in this civil action, including in bifurcated proceedings, if legally warranted, to have the jury to determine whether punitive damages shall be imposed against the Defendants or either of them.

**Respectfully submitted** this _13th_ day of _June_, 2014.

By: _____
Keith D. Stewart, BPR #17574
Stewart | Dupree | PA
713 Market Street, 2nd Floor
Knoxville, TN 37902
(865) 437-5081

By: _____
J. Steven Collins
Burroughs, Collins & Newcomb PLC
P.O. Box 551
Knoxville, Tennessee 37901-0551

Attorneys for Plaintiff,
Rebecca Spears

### COST BOND

We the undersigned acknowledge ourselves sureties for the costs incident to this civil action, not to exceed Five Hundred Dollars ($500.00), and/or for the payment of the Court's costs and litigation taxes which may be awarded in this civil action, all in accordance with <u>Tenn. Code Ann</u>. § 20-12-120.

By _____

25