# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## AT KNOXVILLE

| | |
|---|---|
| REBECCA SPEARS ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | NO. 3:14-CV-00317 |
| ) | |
| NHC HEALTHCARE, KNOXVILLE, LLC, ) | JURY DEMANDED |
| <u>et</u>. <u>al</u>., ) | |
| Defendant ) | |
| ) | |
| ) | |
| ) | |

## FIRST AMENDED COMPLAINT FOR DAMAGES

The Plaintiff, Rebecca Spears ("Ms.Spears"), files this civil action and sues the

Defendants in the amount of One Million Dollars ($1,000,000.00) for compensatory

damages and in the amount of Two Million Dollars ($2,000,000.00) for punitive

damages. Ms. Spears sues NHC Healthcare/Knoxville, LLC ("NHC") under the

Tennessee Human Rights Act, T.C.A. Section 4-21-101, et. seq. ("THRA") for sex

discrimination, sexual harassment and retaliation and under the Tennessee Common

Law for intentional, reckless and negligent infliction of emotional distress. Ms. Spears

sues Darren Murphy, Tim Martindale and Jeff Tambornini for violations of the

Tennessee Human Rights Act for aiding and abating sexual harassment and

discrimination and retaliation and under the Tennessee Common Law and for

intentional, reckless and negligent infliction of emotional distress.

1.     This Civil Action was originally filed in the circuit court for Knox County,

Tennessee, styled Rebecca Spears v NHC Healthcare/Knoxville, LLC <u>et</u>. <u>al</u>., Docket

No. 2-381-14 on June 13, 2014. On July 11, 2014, the civil action was removed to Federal court on the basis of federal questions under the laws of the United States based on allegations of violations of Title VII of the Civil Rights Act of 1964; 42 USC section 1981; and 42 USC section 2000e. This First Amended Complaint alleges no violations of Title VII of the Civil Rights Act of 1964, 42 USC section, 1981 or 42 USC section 2000e nor does it allege any violations of any federal laws. The Plaintiff is a citizen and resident of Tennessee, the individual Defendants are citizens and residents of Tennessee and NHC is a Tennessee Limited Liability company. There is no diversity.

2.      This civil action is a proceeding for benefits due Ms. Spears and for relief requiring Defendants, to provide Mrs. Spears compensatory damages, damages for humiliation and embarrassment, prejudgment interest, reasonable attorney fees and costs, punitive damages for intentional, malicious, fraudulent, and/or reckless unlawful conduct and for such additional damages and relief as may be necessary to effectuate the purposes of the Tennessee Human Rights Act and Tennessee's Common Law.

3.      Rebecca Spears is a female resident of Knox County, Tennessee.

4.      Defendant, **NHC Healthcare/Knoxville LLC**, is a Tennessee limited liability company conducting business at 809 E. Emerald Avenue in Knoxville, Knox County, Tennessee, with its principal place of business at 809 E. Emerald Avenue in Knoxville, Knox County, Tennessee but upon information, knowledge and belief, NHC Healthcare/Knoxville, LLC is a series LLC being part and parcel of NHC Healthcare LLC with its principal place of business at 100 East Vine Street Murfreesboro, Tennessee, 37130, and may be served with process through its registered agent, registered with the

Tennessee Secretary of State, National Registered Agents, Inc., 800 South Gay Street, Knoxville, TN 37995-9710.

5.      Defendant, **Darren Murphy** is the Assistant Director of Nursing, a management level supervisory employee of NHC. At times material Defendant Murphy was Ms. Spears's supervisor when Ms. Spears worked as a MDS/Careplans Coordinator. Mr. Murphy may be served with process in care of his employer at NHC Healthcare/Knoxville, LLC, 809 E. Emerald Avenue in Knoxville, Knox County, Tennessee.

6.      Defendant, **Tim Martindale**, the Director of Nursing is a management level supervisory employee of NHC Healthcare. At times material Defendant Martindale was Ms. Spears's supervisor where Ms. Spears worked as a Director of Nursing at NHC Healthcare facility in Knoxville. Mr. Martindale may be served with process in care of his employer at NHC Healthcare/Knoxville, LLC, 809 E. Emerald Avenue in Knoxville, Knox County, Tennessee.

7.      Defendant, **Jeff Tamborini**, the Facility Administrator is a management level supervisory employee of NHC. At times material Defendant Tamborini had supervisory authority over Ms. Spears's. Mr. Tamborini may be served with process in care of his employer at NHC Healthcare/Oak Ridge, 300 Laboratory Road, Oak Ridge, Anderson County, Tennessee.

8.      Defendant, NHC's operations were and are sufficient to classify it as an "employer" within the meaning of the THRA. Defendants, Darren Murphy, Jeff Tamborini and Tim Martindale are jointly and severally subject to liability under the THRA for having committed discriminatory practices in aiding, abetting, inciting, compelling and/or

commanding NHC to engage in practices declared discriminatory by the announced public policy of Tennessee contained in the THRA.

9.    Defendants Darren Murphy, Jeff Tamborini and Tim Martindale are further liable to the Plaintiff under the Common Law of Tennessee because they have intentionally, recklessly and negligently inflicted emotional distress on Ms. Spears.

10.    Ms. Spears has been employed by the Defendant for approximately six (6) years and six (6) months. She was hired on September 5, 2007, and continues to be employed in the role of reduced role of LPN / Floor Nurse having been demoted from MDS Coordinator / Careplans and PAE Nurse. Ms. Spears continues to this day to suffer discrimination, harassment, retaliation and intentional and negligent infliction of emotional distress at the hands of NHC, Murphy, Tambornini and Martindale.

11.    Ms. Spears was demoted after making complaints of sexual harassment against her immediate supervisor, Darren Murphy.

12.    Since Ms. Spears made the complaints, she has been subjected to discrimination, discriminatory treatment, retaliation and harassment.

13.    The discrimination and harassment are because of her sex and in retaliation for making complaints about discrimination and making complaints regarding illegal activities at NHC.

14.    Since making complaints of sexual harassment, discrimination and retaliation, Ms. Spears has suffered adverse employment actions:

(a)    She has been demoted,

(b)    She was moved from a window office to a cubicle,

(c)    Her job responsibilities have been removed

-4-

(d)     Her workplace is now an extremely hostile environment.

15.     Ms. Spears has engaged in protected conduct since early October 2012 and she has been retaliated against by Darren Murphy, Tim Martindale, Jeff Tamborini and NHC.

16.     Ms. Spears has been and is being retaliated against for: 1) complaining of sexual harassment by her supervisor Darren Murphy; 2) complaining about sexual harassment by Rick Smith, a co-worker; 3) being a woman; filing a Charge with the Tennessee Human Rights Commission ("THRC") and filing this Civil Action

17.     Ms. Spears is treated differently than her co-workers at NHC.

18.     Ms. Spears has been singled out for adverse employment decisions and subjected to punishment by Darren Murphy, Tim Martindale, Jeff Tamborini and NHC

19.     NHC was put on notice of the discrimination, harassment and retaliation.

20.     NHC has done nothing to investigate, remediate or otherwise address the illegal conduct of its employees.

21.     NHC has failed to follow up on any investigation of the actions of Darren Murphy, as follows:

(a)  it has conducted no investigation,

(b)  it has not interviewed a single witness; and,

(c)  it did not interview Ms. Spears regarding her allegations.

22.     Chris West, NHC Vice President for Human Resources  told Ms. Spears he was "unable to validate the merits of my [Spears] complaint." Although NHC Human Resources conducted no investigation and he spent only approximately thirty minutes at the worksite

23.     Ms. Spears was demoted to assistant MDS coordinator and her trainee, a younger female was promoted to be her supervisor. Rebecca was subsequently demoted again to floor nurse.

24.     Jeff Tambourine, the facility administrator repeatedly told Rebecca to "let it go" concerning her complaints against Darren Murphy and told her "you are digging a hole." Mr. Tamborini also threatened Ms. Spears, "I can get people to say things about you."

25.     Prior to her complaints of sexual harassment on October 8, 2012, Ms. Spears' job responsibilities included:

      (a)     MDS coordinator for the entire facility.

      (b)     Attending PPS meetings every morning to communicate with the interdisciplinary team.

      (c)     Completing all MDS assessments, including PPS assessments, admission, significant change of status and quarterly assessments.

      (d)     Completing any CAA's (care area assessments) that accompanied the comprehensive assessments.

      (e)     Scheduling all MDS assessments and care plans.

      (f)     Communicating with the therapy department and keeping track of all Change of Therapy assessments as well as End of Therapy assessments, which included running daily reports.

      (g)     Acquiring signatures from the interdisciplinary team for all MDS's that had been completed.

(h) Filing all completed signature sheets on the appropriate medical record.

(i) Delivering in-services on ADL documentation periodically and during new employee orientation.

(j) Entering tracking forms, death in the facility forms and discharge assessments. Rebecca was responsible for ensuring that all assessments were locked and transmitted in a timely manner.

(k) Reporting to the second floor dining room daily and assisting with lunch along with the other coordinators and management.

(l) Assigned a specific day of the week to meet with new patients and/or their family to complete a n Advance Directive form.

(m) At the request of Mr. Tambornini and Mr. Martindale, Rebecca was tasked to monitor nursing documentation and speak to the floor nurses directly if corrections were in order.

(n) Working the med cart on occasion if needed.

(o) Meeting with and providing reports to Harmony Healthcare when they were in the building.

(p) Being the PAE (pre admission evaluation) nurse and completing all assessments for PAE's, gathering and scanning supportive documentation and transmitting them to the state.

(q) Keeping an electronic log of those PAE's that was to be transmitted monthly to the regional office.

(r) Responsible for PASSR's and keeping track of them in a log book.

(s)    Training Heidi Maycann the MDS and care plans.

(t)    Working as House Supervisor (supervise the entire nursing staff) when needed.

26.   Prior to making complaints of sexual harassment Ms. Spears' job performance was only ever complimented, never criticized. In March 2014, Ms. Spears for the first time received a poor job performance review. Darren Murphy, Tim Martindale and Jeff Tamborini caused the review to falsely indicate poor performance. Ms. Spears and her co-employees wear uniforms and she wears the designated uniform but was nevertheless criticized for poor attire. Ms. Spears asked the woman who was made to present the performance report to her what that criticism was about and she was told it had no basis in fact. Ms. Spears asked for a copy of the review and the woman said Tim Martindale said Ms. Spears could not have a copy of it. To try to get away from the harassment, discrimination and retaliation Ms. Spears sought a transfer away from Mr. Murphy in late August 2014 and was told by Brad Shuford she was not eligible because of attendance and the poor review. With regard to attendance NHC has been provided with medical documentation Dr. Ahmed and Nurse Practitioner Carolyn Mitchell of her need to be off work because of anxiety caused by the harassment, discrimination and retaliation.

27.   Ms. Spears' job performance has been extraordinary even since the retaliation began, but she is ostracized. NHC quality indicators continued to improve while Rebecca was the MDS/Careplans coordinator prior to making any complaints, and on several occasions NHC has achieved a five (5) star facility status.

-8-

Case 3:14-cv-00317-TAV-HBG   Document 19   Filed 10/06/14   Page 8 of 22   PageID #: 197

28.   According to Harmony Healthcare Ms. Spears is extremely proficient in capturing and coding correctly on the MDS with supportive nursing documentation to back up coding decisions.

29.   Ms. Spears was given a "final" written warning by Jeff Tambornini and Tim Martindale after Darren Murphy, her immediate supervisor, falsely accused her of sexual harassment. The actions of Jeff Tambornini, Tim Martindale and Darren Murphy were unlawful retaliation for her valid sexual harassment complaint against Murphy and NHC and were intentional acts by Jeff Tambornini and Tim Martindale and Darren Murphy to discourage and prevent NHC from taking any corrective action to remedy the hostile environment of which Ms. Spears had complained and under which she has and continues to the present to suffer injury, loss and damage and serious mental injury due to Murphy's, Tambornini's. Martindale's and NHC's intentional and negligent infliction of emotional distress.

30.   Ms. Spears was sent home, after making complaints of sexual harassment against Darren Murphy, for three (3) weeks. She was told it was in order for the facility to "investigate" the complaints, even though NHC did not send Darren Murphy home when Ms. Spears complained of his harassment.  When she complained of sexual harassment against Mr. Murphy he was not sent home.

31   Upon returning to work on October 29, 2012 Rebecca was demoted and her new job description is as follows:

>    (a)   Hours are 8am - 4pm, reduced from eight (8) to seven (7) hours
>         a day.

(b) No longer allowed to attend the PPS meetings ("morning meetings") and the day to day management of the MDS calendar and scheduling of assessments was removed.

(c) No longer assisting in the dining room at lunch, now tasked to help with breakfast.

(d) Rebecca is the only one required to do assist at breakfast, everyone else in management still goes at lunch time.

(e) Because Rebecca has been barred from the morning meetings, she is now given a list of assessments, CAA's and care plans that need to be completed by Heidi Maycann.

(f) Not allowed to attend care plan meetings or meet with families even though she was responsible for completing care plans.

32. In order to humiliate Ms. Spears and to intimidate her against making further complaints of harassment, discrimination and retaliation, Ms. Maycann has been instructed byTim Martindale to read Rebecca's tasks aloud each morning. Ms. Maycann insists on reading the list to Rebecca in front of her co-workers.

33. For five (5) years Ms. Spears had an office with a window, now along with her job responsibilities being taken away from her, her office was taken. She was moved to a crowded interior cubicle. Even though she did MDS assessment and care plans she was moved out of the MDS/Care Plan office. She was moved into a cubicle in the nursing office. Mr. Martindale told her "there was office space available and that's why you're here." The truth is management was fearful she will file a lawsuit and they are attempting to humiliate and intimidate her. Management is trying to force her to quit

her job. Mr. Martindale told her that she is no longer the MDS coordinator that she had been replaced. Ms. Maycann [her trainee] was promoted and she was demoted, even though she is a certified RAC (Resident Assessment Coordinator) and Ms. Maycann is not. Initially Ms. Spears was training Ms. Maycann so they could both do MDS's and care plans and Marsha Carter, the care plan coordinator, could go back to the floor (per Ms. Carter's request). Now Ms. Maycann and Ms. Carter are in the MDS/Care Plan office along with the nursing supervisor. Ms. Maycann occupies the desk, chair and office space that Mrs. Spears occupied for five (5) years and six (6) months. She was moved to the Nursing office where the Nursing Supervisor was previously.

34. Other areas that have changed with my employment since my return are as follows.

(a) People in the building will not speak to Ms. Spears and upon information and belief, NHC employees have been instructed by Darren Murphy, Tim Martindale and Jeff Tambornini not to speak to Ms. Spears.

(b) There is a lack of communication with the interdisciplinary team that significantly hinders Ms. Spears' ability to do her job.

(c) Ms. Spears was moved to a very cramped cubicle and then a broom closet and later moved to the floor, with no office at all, where she is required to be on her feet almost the entire day.

(d) Ms. Spears was not given any office supplies or even the assessment forms she needed to do her job while she was the assistant to Ms. Maycann.

-11-

(e) Her RAI manual, that she personally kept updated was taken. This manual is essential for Rebecca to perform her job. It is over 500 pages in length.

(f) Ms. Spears has been degraded and belittled at every opportunity by Darren Murphy, Tim Martindale, and Jeff Tamborini.

(g) Ms. Spears has been ostracized on a daily basis since October 2012. Her co-workers ask her if she is in solitary confinement or what she did to get in trouble and be demoted.

(h) Ms. Spears has not been allowed to keep her RAC certification current. Prior to her complaints of sexual harassment, NHC paid for her certification and each time renewal was due and NHC also funded any education regarding the frequently changing rules of the MDS 3.0 process.

35. Mr. Martindale will not get on the same elevator with Rebecca.

36. Mr. Tambornini will barely say good morning and it's obvious that our working relationship has been destroyed by the actions of Darren Murphy. Previously Ms. Spears had a very good, professional working relationship with Mr. Tamborini.

37. Mr. Tambornini ordered Ms. Spears a special chair five (5) years ago when she was suffering back pain. The chair was removed from her upon her return to work and is now occupied by Rebecca Maycann.

38. Darren Murphy repeatedly winks and smirks at Ms. Spears in the hallway. He also says to her, "bitch", whistles and makes inappropriate gestures (grabbing his

crotch, and thrusting his pelvis toward her, licking his lips, etc.) when passing her in the hallway.

39.    Darren Murphy came into Ms. Spears' office the first day she was allowed to come back to work after making complaints against Mr. Murphy, closed the door, smirked and winked.

40.    A partner, Melissa Roberts, saw Darren Murphy go in and close the door and she also saw that Ms. Spears was visibly shaking, crying and had hives on her arms and neck as a result of the incident.

41.    All incidents with Darren Murphy have been reported to Mr. Tambornini and/or Mr. Martindale and/or Mr. Blevins, NHC Vice President, and/or Mr. Shuford.

42.    No corrective action to remedy the discrimination, hostile environment or retaliation has been taken by NHC or any of the responsible management.

43.    Darren Murphy allows his manager, Tim Martindale, to hunt on his land. They are personal friends. They are coordinating their efforts to cover up the harassment, discrimination and retaliation against Ms. Spears.

44.    Mr. Murphy has bought lunch several times for Mr. Martindale and several other employees all of which do not speak to Rebecca any longer. Darren Murphy and Tim Martindale have used their personal friendship to coordinate acts of retaliation and acts of intentional, reckless and negligent infliction of emotional distress against Ms. Spears such as falsely accusing her of sexual harassment, giving her a final written write up, demoting her, creating and then intensifying the sexually hostile working environment that materially interferes with Ms. Spears ability to discharge her duties, falsely causing her to receive poor job performance review having her diminished job

tasks read out loud to intimidate and humiliate her in front of her co-workers, in response to her complaints of sexual harassment and retaliation questioning co-workers not about Darren Murphy's activities but instead harming her workplace reputation by asking other employees such questions as whether Ms. Spears has looked at any inappropriate materials such as pornography on her computer or if she had any incriminating pictures or texts on her phone. Additionally Mr. Martindale allowed Mr. Murphy and facilitated Mr. Murphy being present when the employees were present when employees were questioned in order to intimidate them and interfere with any investigation which might have led to corrective action to remedy the hostile environment. The coordinated activities of Murphy and Martindale just mentioned are not exclusive of their actions and are continuing as Ms. Spears has been laboring in an environment of sexual hostility, gender hostility and retaliation on an ongoing basis since she first was forced to complain about Murphy's sexual harassment.

45. Ms. Spears' demotion is directly related to her complaints of sexual harassment.

46. When Darren Murphy trapped Rebecca in her office blocking the door, Mr. Martindale simply said "well... Rebecca, Darren does need access to your office, he's my assistant director of nursing."

47. Darren Murphy and Tim Martindale have orchestrated the adverse employment decisions against Ms. Spears and caused her demotion, they have tried to force her to quit.

48. Darren Murphy came in the office that Ms. Spears was in to retrieve papers from the printer in that office and as he was leaving called her a "cunt."

49    NHC has taken no corrective action to remedy the hostile work environment.

50.    In an attempt to harass and intimidate Ms. Spears she was called into a meeting on January 30, 2013 with Ray Blevins, the Regional Vice President, Tim Martindale, Director of Nursing, Nancy Curtwright, Regional Director of Nursing, and Jeff Tamborini, the Facility Director.

51.    Ms. Spears was told that her complaints had been "fully investigated" and appropriate action taken.  Mr. Tamborini told Ms. Spears she should be nicer.

52.    Ms. Spears asked about her formal complaints to home office, specifically her demotion, downsizing her office, sexual harassment and being ostracized at work but she was ignored.

53.    Darren Murphy said "Don't you just hate it when you don't get your salami?" There was no mistaking his smirk or the sexual nature of his remark.

54.    Darren Murphy continues to harass Ms. Spears with the full knowledge of management, but no one will do anything to protect Ms. Spears from him.  Each time Ms. Spears reports Murphy's outrageous conduct she is punished.

55.    When Ms. Spears informed Mr. Martindale that her photo had been removed from the wall he said "I'll get one put back up there."  The next day a 3 year old photo of Rebecca in a kitty cat suit at a Halloween party was put on public display.

56.    Mr. Martindale's actions were designed to humiliate and embarrass Ms. Spears and on information and belief were conducted in concert with Darren Murphy.

57.    Due to the actions of Darren Murphy, Tim Martindale, Jeff Tamborini, and NHC, Ms. Spears' hands now shake and she breaks out in hives any time Darren Murphy engages her.  When she is paged overhead by Tim Martindale or is called to his

-15-

office she is visibly shaking, hands trembling and suffers increased anxiety. Most time she will have to take medication to lower her blood pressure.

58.    Darren Murphy intentionally verbally assaults Rebecca.

59.    Carolyn Mitchell, NP put Rebecca on anti-anxiety medication and a beta blocker to help her deal with the heightened stress. She has also had to be treated for physical and psychological manifestation of workplace stress caused by the illegal behavior of the Defendants, NHC, Murphy, Tambornini and Martindale by her personal physician Dr. Ahmed. Mr. Brad Shuford has stated in an NHC Management Meeting that he believes Ms. Spears is suffering from anxiety due to the work environment.

60.    During Ms. Spears's employment, she was discriminated against in the terms and conditions of her employment due to her sex.

61.    Rebecca Spears satisfactorily performed all of her job duties throughout her length of service with NHC Healthcare.

62.    Rebecca Spears was and is qualified to perform all of the required duties of her job as a MDS Coordinator / Careplans and PAE Nurse.

63.    The actions of Darren Murphy, Tim Martindale, Jeff Tambornini and NHC were unexpected to Rebecca Spears because she performed her job well and exceeded expectations.

64.    Mrs. Spears has received no prior warning that anyone with NHC considered there to be any difficulties with the way in which she discharged her job duties prior to her complaints against Darren Murphy.

65.    When she met with Mr. Blevins and other management personnel on January 30, 2013, numerous pretextural reasons were given for holding the meeting.

This meeting was severely emotionally upsetting to Mrs. Spears because she was already quite upset and her nerves were on edge as a result of having to deal with Darren Murphy.

66.     Although Mrs. Spears disagreed very much with the criticisms falsely leveled at her, she was, at the time of the meeting, in no physical or mental state to take issue with the members of management who were in positions above her.

67.     At the time of Mrs. Spears's demotion, she was replaced by Heather Maycann, a younger less qualified individual.

68.     Ms. Spears was suspended for stating to a family member that the facility was short staffed, only after the family member asked Ms. Spears three different times. She was suspended for being truthful. This suspension came several days after she had requested time off work in order to meet with the THRC, which requested an interview due to her harassment, discrimination and retaliation. In order to retaliate more against Ms. Spears, Darren Murphy and Tim Martindale interrogated employees about Ms. Spears interaction with the family member, and Mr. Darren Murphy asked the co-employees leading questions to try to trump up a false infraction against Ms. Spears. When one of those employees told Murphy that she did not remember all the details of the incident, he told that employee that he would show the employee the statement of another employee so that the employee then being interrogated could conform the statement to his liking. This intentional act of retaliation was an intentional act to dissuade, discourage and prevent NHC from properly investigating the valid complaints of Ms. Spears for sex harassment directed against her by Darren Murphy and was and is part of an ongoing attempt to have her fired for false and pretextual reasons.

-17-

69.     No other employee has been suspended for stating NHC was short staffed prior to Ms. Spears suspension or after her suspension.

70.     Ms. Spears was suspended in December 2013 for calling in sick. Even though she provided a statement from her physician and had sick days accumulated and there was a sign on the front door of the facility stating that no one should enter the building if they had the flu or they were experiencing flu like symptoms. Prior to making complaints of sexual harassment Ms. Spears has never been suspended while employed by NHC or any other place of employment.

71.     Ms. Spears has not been allowed to work as House Supervisor since making complaints of sexual harassment.

72.     Ms. Spears has been sent home as overstaffed after being out due to illness and also sent him overstaffed at times when she did not have specific job duties. Mr. Martindale has stated to Ms. Spears, "I'm not sure where to put you or what to do with you."

73.     Ms. Spears has made multiple requests to Mr. Shuford that Mr. Martindale stop his slander of Rebecca. Mr. Martindale has told other employees that Rebecca is evil, dangerous and he is trying to save other employees by keeping them away from her. Mr. Martindale has actual and extensive knowledge of Ms. Spears complaints of sexual harassment, discrimination and retaliation against Mr. Murphy and NHC. Ms. Spears specifically has asked him to intervene and investigate and take action on numerous occasions. Mr. Martindale knows a proper investigation requires proper inquiry of Ms. Spears' co-employees in a non-intimidating environment free of intimidation and by telling Ms. Spears co-employees that she is evil and dangerous and

-18-

that he, Martindale is trying to save them by keeping them away from her, Martindale is interfering with and preventing NHC from conducting proper investigations and taking effective prompt remedial action to end the discrimination, harassment and retaliation.

74. During the time when the initial complaints of sexual harassment were made by Ms. Spears and up to the present, Ms. Spears has never been given the opportunity to speak with a female or even ask if she would be more comfortable speaking with a female. Mr. Martindale said, "that's the way we roll."

75. Ms. Spear's demotion in October 2012, was a pretext.

76. Ms. Spears was discriminated against in the terms and conditions of her employment on the basis of her gender and for complaining of discrimination, harassment and retaliation in violation of the THRA.

77. Ms. Spears was demoted due to her gender and for complaining of discrimination, harassment and retaliation in violation of the THRA.

78. The conduct of the Defendants, NHC, Murphy, Martindale and Tambornini and each of them, was and is such that it caused Ms. Spears severe emotional distress which was actually and proximately caused by the extreme and outrageous conduct of the Defendants and their conduct was committed with specific intent to cause emotional distress and/or with a reckless disregard of the probability of causing that distress to Mrs. Spears.

79. Defendant, NHC, is vicariously liable for the acts of its supervisory employees for violation of the THRA, intentional and negligent infliction of emotional distress. Defendants Murphy, Martindale and Tamborini are liable to Plaintiff under the common laws of Tennessee for intentional and negligent infliction of emotional distress

and under the THRA as persons who aided, abetted, incited, compelled or commanded NHC to engage in sex discrimination, harassment and retaliation which are expressly prohibited by Tennessee law.

80.     The wrongful actions of the Defendants were intentional and/or in reckless disregard for the statutory and common law rights of Ms. Spears.

81.     As a direct and proximate result of the wrongful actions of the Defendants in discriminating against Ms. Spears on the basis of her sex and in retaliation for her lawful exercise of her protected rights and as a result of their negligent, intentional and outrageous conduct, Ms. Spears has suffered both financially and emotionally.  In particular, Ms. Spears lost and will continue to lose salary, employment opportunities and advancement and various other employee benefits that she would have earned.  In addition to the actual losses the Plaintiff has sustained, she has suffered great and severe mental anguish and serious mental and physical distress resulting from the illegal, negligent, intentional, malicious and reckless conduct of the Defendants, NHC, Murphy, Martindale and Tambornini and from the embarrassment and humiliation which she foreseeably experienced because of the Defendants' illegal actions.

82.     Ms. Spears has been subjected to sex discrimination, a hostile work environment and retaliation for making complaints of sex discrimination and harassment, all in violation of the THRA.

**WHEREFORE**, Mrs. Spears, the Plaintiff, respectfully requests of the Court as follows:

A.     That the Court require the Defendants to Answer within the time prescribed by law.

Case 3:14-cv-00317-TAV-HBG   Document 19   Filed 10/06/14   Page 20 of 22   PageID #: 209

B.      That the Court, upon hearing of this civil action, determine that the Plaintiff should be awarded a judgment for damages for lost wages and the value of all employment benefits, which she has lost from the date of the Defendants' discriminatory actions.

C.      That the Court award Ms. Spears additional compensatory damages, including damages for humiliation and embarrassment as are allowed pursuant to the provisions of the THRA.

D.      Ms. Spears should also be awarded pre-judgment interest, reasonable attorney fees and such other and further relief as the Court deems proper pursuant to the applicable Common Law and the THRA.

E.      Ms. Spears should be awarded all of her discretionary costs and all other such further and, general legal and equitable relief to which the Court finds her entitled and which justice requires.

F.      Ms. Spears further requests that at the appropriate time, the Court empanel a jury of maximum number allowed of good and true women and men to try all of the issues joined among the parties in this civil action, including in bifurcated proceedings, if legally warranted, to have the jury to determine whether punitive damages shall be imposed against the Defendants or any of them and if so in what amount..

Respectfully submitted this 6th day of October, 2014.

/s/ Keith D. Stewart
Keith D. Stewart, BPR #17574
Stewart | Dupree | PA
713 Market Street, 2nd Floor
Knoxville, TN 37902
(865) 437-5081

/s/ J. Steven Collins
J. Steven Collins, BPR # 012030
Burroughs, Collins & Newcomb, PLC
P.O. Box 551
Knoxville, TN 37901-0551
(865) 342-1040

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing First Amended Complaint was electronically filed with the Federal District Court. Notice of this filing will be sent by operation of the Courts Electronic Filing System to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's Electronic Filing System.

This 6th day of October, 2014

/s/ J. Steven Collins
J. Steven Collins, BPR # 012030